on behalf of the Avalon co-guardians, Ms. Rebecca Walnopess, on behalf of the First Bank & Trust Company, the only one, Mr. Edward Malone. All right, good morning, Counsel. Justice Bowman is the third member of our panel. He's unable to be here today. He will review the recordings of this oral argument before we render a decision in the case. With that, Ms. Wallenfels, you may proceed. Good morning, Your Honor. Rebecca Wallenfels appearing on behalf of the appellant co-guardians of the Estate of Donna Denton. Your Honor, this case really comes down to a question about the priority in the payout of the assets of a guardianship estate where there are insufficient assets to pay all of the parties in question, judgments, awards that have been entered by two different courts. In this case, the probate court had determined that priority was to be given to, in this case, the appellant, I'm sorry, the appellee, First Bank, based on finding that when they proceeded under Chapter 12 of the Illinois Rules of Civil Procedure, following obtaining a money judgment, they filed a citation to discover assets. They recorded the judgment lien. They gave them a secured interest and, therefore, priority as to disbursements of the guardianship estate assets, including priority over amounts previously awarded from the guardianship assets by the probate court itself, an award of attorney's fees, GAL fees, order for distribution to other creditors. And there were also subsequent requests for fees that were also approved by the court until the court then finally determined this issue of priority. Does it matter who's first? It depends on whether or not you would determine whether a security interest was created by virtue of Chapter 12 first and then also what the priority is under, perhaps, Chapter 18 of the Probate Act, which I would argue is what really governs here. Well, Chapter 18 doesn't specifically provide for classification of claims against decedents' estates, not guardianship. It doesn't. What we have, though, under the Probate Act is 18-15, which says that a guardian is to pay claims as he has funds, therefore, which could be interpreted, and there's no court case interpreting what 18-15 means, to be basically also a similar order of priority as those claims are presented to the probate court and then as the guardianship has estates, because the guardianship, unlike a decedent estate, can go on for many years. Resources can come in. Creditors can show up at various times. So one possible interpretation would be that their priority would be by who got to the probate court first. In this case, it certainly was very clear that there was awards given by the probate court prior to the judgment given to the appellees. But the Probate Act does say that civil practice law and all existing and future modifications, as well as the Supreme Court rules apply, which would include Chapter 12, correct? It would. I have really three main arguments about why, with respect to the creation of a security interest, it does not apply. The first is really the concept of incustodial legis, that nice Latin phrase. But what it really means, what the legal theory really stands for is that you can't create a security interest by virtue of attachment, garnishment, enforcement proceedings on provisions like Chapter 12 of the civil procedure, where those assets that you are looking to attach and garnish and enforce against are already in the control and under the jurisdiction. And frankly, in a guardianship estate, the ownership of a court, fundamental to a guardianship estate, is that the probate court takes away the property rights of the ward, and they become vested in the probate court. The probate court really becomes the owner and controller of the estate. Even the guardian is referred to as the agent of the court. It's not the owner of those assets. One of the cases you cite for this in the legal custody argument is Stevenson out of California. Yes. And that case relied on a McCracken case, which was out of California. Yes. And in McCracken, that court specifically noted that Illinois was one of the few jurisdictions that didn't follow this procedure. There is no court case in Illinois on this concept. Well, I found a Brownlee case, which is a 258 Illinois appellate. That would be not second or third. Illinois appellate. It's from 1930. 179. 258 ILAP 179. That case seemed to indicate that the 1915 statutory amendments that declared property in the hands of administrator was no longer deemed to be in custodial allegiance. Right. In that case, though, Your Honor, and that was decided probably before some of the version of the Probate Act that we have now. I think the Probate Act changed in 1973 to provide various differentiations. Certainly with, for example, in a decedent's estate, I would agree that that isn't the case anymore. Because in a decedent's estate where you have an executor or an administrator appointed, the assets are usually deemed to be a part of the estate itself. And that fiduciary is really the owner or possessor of those property rights and interests. And they pass it on to the beneficiary. So that title passes that way. However, in a guardianship estate, and even in this case that I had cited with respect to the statement that the guardian is really just the agent of the court, I think that the concept of a guardianship estate and still being in custodial allegiance is still applicable. Because a guardianship estate is still somewhat different. You're taking away the property rights and you're vesting them in a court with jurisdiction, not into the guardian. The guardian serves at the court's authorization and control. The guardian has to post a bond for his activities. The guardian has to account to the court. The guardian has to petition the court for authorization to do various acts. That, in a guardianship context, is still fundamentally a classic example of that in custodial allegiance determination. The second issue I take with the probate court's finding is that I think the probate court failed to also appreciate that a probate proceeding is, at its heart, also an in rem proceeding. And, therefore, it is different. And the judgments and awards entered by the probate court are different. We've got, starting with the Illinois Supreme Court case in Mosier v. Osborne and in a number of appellate courts since then, have clearly said a probate proceeding is an in rem proceeding. It is regarding property. And the judgments entered are with respect to property rights and interests. So, really, that's a first-in-time argument, then, because if the court is making an award and that judgment enters, then, based upon your in rem argument, that property is gone from the estate, basically. Yes. Yes, Your Honor. So, with this, I mean, we're talking about major policy issues here. Wouldn't that create kind of a rush to the courthouse to get things done first on behalf of anyone? Well, that's true of any creditor, though, Your Honor. And that's true even of the cases cited by the appellee in support. You know, when someone gets a judgment from a chance recording, it's a money judgment, they need to rush under Chapter 12 to, you know, file their citation to discover, to record their lien, because, you know, if they are first before another creditor, then they take time. Isn't that what the GAL did in this case? Yes, he got his court order entered, and he had also filed a lien. Is it the long accepted rule that judgment liens are entitled to priority over all unsecured claims, regardless of whether or not it's in rem or not? In this, for the in rem, yes. You still have the concept within custodial legis about whether you can, in the absence of the leave of the court with control over the real estate. You know, one of the things that's different is the GAL's leave to file his lien was authorized by the probate court. A probate court can, you know, authorize the creation of a security interest, which is what it did. Going back to the discussion of, you know, probate proceedings being an in rem proceeding, you know, in this case, the reason why that distinction becomes relevant here is when a monetary award is given, and that, you know, it's really, it's an impersonal judgment, because you've gone to a court, a appellee's really got a finding, a determination by the chancery court that there was a debt, and here's the amount of the debt. In order to go and enforce that judgment and that debt, the court right now only has jurisdiction over the parties. To bring the property rights of that judgment debtor in before the court is where you have Chapter 12 come in. So Chapter 12 comes in, and it's really what gives the mechanism for enforcement. It gives that jurisdiction over property. That's the nature of, you know, a citation to discover assets, and the recording is that it gives the court authorization to enforce against particular pieces of real estate, because that's what you bring in. With a probate proceeding, obviously, you already have property that is subject to the probate's control, court's control and jurisdiction. So in order to enforce a judgment against an estate, our argument is that you take that judgment into the probate court and get it enforced in the probate court who has that control of those assets and can authorize that disbursement and that jurisdiction, because it's got that control. And, you know, as the court had noted in, you know, in the Shermer case and in Moore, you know, when a probate court authorizes or disburses or orders an award for a payment or authorizes a disbursement, the party itself has one recourse against the bond that has to be posted. They can enforce that, you know, with the court either by seeking a replacement of if the guardian fails to adhere to the court's order, replacing the guardian. The court itself can order the turnover of estate assets. It has that authority. You don't need to go through a citation to discover assets. You don't need to take that step, because the probate court itself already has that control over those assets. And I do think that at a minimum, you know, the in rem nature of the probate court proceeding does suggest that awards made by the probate court prior in time, because those are effectively a determination that these assets belong to or should be distributed to these properties, those assets really cease being a part of the estate. They become, you know, a liability belonging to those other parties subject to their actual maybe physical disbursement. Do you concede that pursuant to 1402M of the Civil Practice Law that the Bank's Deficiency Judgment did attach to all tangible personal property of the guardianship of the estate when it was served on this then and this is over on December 3rd? I disagree that it created a security interest. I do think that that established its claim to those assets, that it had a claim to being paid. But, you know, for example, in a probate court proceeding, you know, the nature of also a citation to discover assets is that you get a list. You need to find out and discover what a list of those assets and those properties are. In a probate court, especially in a guardianship estate, the guardian already has gotten inventory. There's already been accounting files. All of that is one of public record. And a creditor, even a creditor who's just filed a claim, is an interested party. If you look at the definition of interested party in the Probate Act, Section 1, a creditor is an interested party, which gives them, one, an entitlement to that inventory, an entitlement to that accounting, and also, more importantly, it actually gives them standing even before, you know, a judgment would be entered, that they could object to how money is being spent, what's being paid, what the fees are. And in this case, the FLE did, in fact, object to, you know, fees, a request for fees and a request for disbursement, objected to a petition regarding the sale of tangible personal property, weighed in on, you know, the method of that sale, the appropriate parties for that sale. So, you know, a creditor, even before a judgment is entered, and certainly even after, has got, you know, that benefit and that standing having gone into probate court where they can, you know, essentially weigh in on what this creditor, how they can really spend their money, even prior to even the judgment being entered, because they are, by definition, an interested party, and therefore the Probate Act gives them automatic standing. My third principle argument is just the necessary implication of the lower court's decision is really that an award, an order, a judgment, or a determination by the probate court would really mean that, you know, if Chapter 12 really were to govern and control, then every party, after they got that from the probate court, would have to, you know, go and file a citation to discover assets, go and record their lien, go and, you know, as a mechanism of enforcement. If Chapter 12 doesn't control, I know you're arguing this, 18, 10, and 13, and all those control, but, I mean, the Givas or Gavis case seems to indicate that those don't control a guardianship estate. So let's just assume for a moment that Gavis is correct and those don't control a guardianship estate, and your argument is correct that 12 doesn't control a guardianship estate. What's the probate court to do? How's the probate court to determine priority? If we're not going to go by security first and we're not going to go by this priority list in 18, what's the probate court supposed to do? That's where we have, you know, right now a statute that provides probably less than clear guidance, because you have 18-15, which is, you know, a very simple basic statement that the guardianship is to pay claims as he has funds therefore. One of the implications of that, obviously, is that, you know, you pay them out as the creditors are presented. There is the Melbourne case, which we did cite in our statutes. There we had a case similar to this where you had multiple claimants. They were all nursing homes who were filing claims in a guardianship estate. I can just finish this up. And there the court basically awarded it pro rata. That was the court's determination. Later there was a, you know, that's in dicta in that case, because one of the creditors then sought to realize on the guardian's bond and sought to get assets in that mechanism. But if you look at the underlying facts of that case, there in the probate court faced with this situation, multiple creditors, claimants, you know, with their judgment liens from nursing homes, they just did a pro rata on the creditors. We don't know from that case whether those creditors were secured or not, correct? No, they were nursing homes, so they could have had a nursing home liens. They could have, but we don't know. We don't know the facts. If one was secured and one wasn't, we might have a little bit better idea of what was going on there. Yeah, they don't say. But it is clear that the trial court did do a pro rata distribution among the creditors. All right, counsel, you will have a chance to rebuttal. Mr. Wolfe, you may proceed. May it please the Court, my name is Edward Malone, and I represent First Bank & Trust Company of Illinois. The probate court correctly held that the bank's claims on the Denton estate had priority over the guardian's claims because the banks perfected its liens and the guardians did not, and nothing in the probate act requires a different result. This case is really as simple as that. Over 100 years of Illinois law tells us that secured creditors get paid before unsecured creditors, and, in fact, creditors rely on that system of perfected liens when they're making decisions. Would you agree with counsel's argument that a guardianship, the court has to tell the guardians what to do with the money? The guardians can't just go off spending the money without either prior approval or post approval from the court, correct? I do agree with that, Your Honor, and I think that that leads into an important procedural point, and I know that the court's guidance suggests that we shouldn't discuss the procedural history, but here I think the procedural history is of some help in considering some of the guardians' arguments. The bank filed its foreclosure action in chancery, which it was required to do. It named John Haper, who was then the temporary guardian of the estate, as a defendant. Soon afterwards, the probate division appointed Mr. Haper and his brother to be permanent guardians to manage some of the property in the estate and specifically to defend against the claim in chancery, to represent, as Ms. Wallentell says, the court in the chancery proceeding. The guardians, in fact, litigated the case all the way through judgment. A judgment was obtained by the Bank of Judgment Foreclosure and Deficiency Judgment. The bank recorded that. The bank also, by the way, in the meantime, intervened in the probate proceeding. The probate division knew what was going on, and then the bank's judgment in its motion for turnover was presented to the probate court, which entered the order that we're here on today. And so the probate court, through the guardians, was fully represented in the chancery proceeding. And I think that goes at least part of the way to addressing the incustodial legis argument that the guardians made. There are no Illinois cases applying the rule of incustodial legis to a guardianship estate, and certainly the guardians cite no cases from any jurisdiction where you have a situation like this where the probate court is, in fact, represented in the other proceeding where the judgment is obtained. The Illinois cases the guardians cite applying that principle were cases where the state, where the court was holding funds really as collateral. There was a bail bond to enforce a judgment lien, and allowing the attachment would interfere with that. That's not the case here. Nothing, this judgment lien isn't going to interfere with anything the probate court is doing. The probate court is holding these funds to pay claimants. The bank is a claimant just like others, and so what the judgment lien does is establish the bank's priority. It's clear, Your Honors, recognized from our briefs we talk about the provisions of the civil practice law and the probate act that incorporate those provisions. There's nothing in the probate act that otherwise provides for a different result. Again, I note Ms. Wallenfeld didn't address it here. In their reply brief, the guardians talk about the Ingrate Cooper case in the Hospital Lien Act and attempt to distinguish that situation from our situation, suggesting that the Hospital Lien Act specifically provides for liens to apply to guardianship estates. In fact, the Hospital Lien Act, which the court in Cooper found gave the judgment, allowed the lien to attach to guardianship estates, doesn't say anything specific about guardianship estates. It doesn't create a specific exception. The Code of Civil Procedure, which does address liens against representatives of estates, is in fact more specific. With respect to the argument that the in rem nature of the proceeding affects the bank's lien, the cases that the guardians cite do not address priority between claimants. They don't address priority between secured and unsecured creditors. They're really cases that are about the res judicata effect of a judgment. Some of them specifically refer to res judicata and, in fact, the limits of the probate court's jurisdiction. Others clearly involve judgments that were entered and that were binding. Here, in fact, the awards to the guardians were never reduced to a judgment, unlike the memorandum of judgment on the GAL. They were never reduced to a judgment. They were just an approval of the guardians' fees. And there was no disbursement from the guardianship estate. And that is... Had there been a disbursement? How would that have changed it? Well, if the funds had actually been disbursed, so, for example, before the bank got its judgment, there were funds disbursed from the guardianship estate to pay for various expenses of the estate. And the bank doesn't claim that it has a lien on those funds that were already gone at the time that it got its judgment. But there was a pot of funds sitting there where the bank got its judgment and recorded it. They had not been disbursed to pay to the guardians or the guardians' attorneys, so they're still sitting in the estate available to be attached. Since there are no Illinois cases, why shouldn't we be persuaded by case law from other jurisdictions that the proceeds would remain in custodial legis? There are a couple of reasons, Your Honor. One, none of the cases... The guardians acknowledged that if there were specific statutory provision that overrode the principle of custodial legis, then it would not apply. And we cite Section 12-103 of the Code of Civil Procedure, which states that a judgment entered against a person because he or she is the holder of Title II property as representative, as defined in Section 1-211 of the Probate Act, shall be enforced only against the property held in a particular representative capacity. And it goes on to say, of course, it can't be enforced against the representative's property. So Code of Civil Procedure acknowledges that you can't have an enforcement of a judgment against property held by a representative. And there's no suggestion in those other cases that the guardians cite that there was something similar in the laws of those states. Is that particular provision that you just cited included in the civil practice law? It's included in the Code of Civil Procedure. The civil practice law is... Which is not a civil practice law? Which is part of the subset of the Code of Civil Procedure. Why should you be allowed to rely on that? Well, a couple of things. First of all, Section 2-1402N, which is the basis for the lien on the personal property citations, is part of the Code of Civil Practice rules. I think what Section 12-103 does is confirm that there's nothing... It confirms that a judgment under the civil practice rule can attach to the guardianship of the state. The whole Code of Civil Procedure contemplates this. And since there's nothing in the probate act that says otherwise, I think that what Section 12-103 is, is confirm what is, at least, is in the civil practice act. That the way to attach a lien in a judgment case, which is what Section 14-02 does, can apply to a guardianship of the state. So, yes, this provision isn't specifically incorporated, but I think it reinforces what's there in the civil practice act, and which is specifically incorporated into the probate act, and which nothing in the probate act overrides. Do you think there's a public policy issue here? I mean, we have a situation where one of the children, Jackie, received an award of $79,000, and I believe it was her job to watch after the mom while she was alive and take care of her expenses and her needs. I mean, that's what we really want with a guardianship of states, to make sure that the disabled person's needs are taken care of. And here we have a situation where someone potentially expends funds on behalf of that person's best interests, and then a secured creditor comes in before that award is paid out and eats up the entire estate. I understand that concern, and it's a legitimate concern, Your Honor. I have two responses to that. One is, unfortunately, that may always be a risk, because you may have situations where you have those needs, and for whatever reason, putting aside whether you have the secured creditor or not, there may not be sufficient funds in the estate to pay for that, and so that's always a problem. Secondly, in this case, there are things that the guardians could have done to protect themselves. They could have sought an earlier disbursement of funds. They got these or, well, I should say the guardians' attorneys in the GAL got some awards over time. The guardians waited until late 2010 to seek their award, which is something that the probate judge actually was concerned about, that they waited so long, and then they didn't seek disbursement until 2011. So if they had sought disbursement earlier, I think they would have had some protection. The other thing is that the claims procedure in Article 18 of the Probate Act provides a process. So, for example, it provides that if the representative of the state has a claim on the estate, which is the case here, the court can ask for a special administrator to be appointed to address those claims. I could imagine a situation here where the guardians could have said, look, we are aware that the bank has this judgment, because the bank got summary judgment in July of 2010. We've got these fees sitting out there. We know that the bank has this judgment. We need to deal with this. They could have asked the probate court to appoint a special administrator. They were parties to the Chancery Court proceeding. They could have said, hey, could you stay entering judgment on this so that we can work out this particular issue? There are things that they could have done, and they didn't do them. And so you wind up in a situation like you have, unfortunately, in many situations, where you have parties who are, whether they be competing mortgage holders or competing holders of a judgment, and a pot of money that isn't big enough to take care of all of it, and the law provides a mechanism for parties to perfect their liens, and the party that perfects its lien by recording its judgment or securing its mortgage comes first. And sometimes that unfortunately results in things, in results that may seem unfair, but we have a system set up that allows parties to protect themselves, and it's there so people can rely on that system, including creditors. It's amazing that there are no cases out there involving this issue. It is amazing, Your Honor, and the only speculation I have about why there are no cases is because perhaps in other cases what happens is what I've suggested might happen, which is that the state deals with the problem before it becomes a problem. Deals with it as they come. In other words, they deal with the problems as they come. You would agree that if there were a number of secured creditors here that a pro-rata distribution similar to, I guess it was the Cooper case, would be potentially sitting as a court of equity would be a potential solution? Well, you'd have to, I think, apportion it based on the priority among the secured creditors, but if we had competing claims among secured creditors, yeah, I think there would be an opportunity to do that, but now we have a secured creditor versus unsecured creditors. I think I heard the bell go off a while ago. No, not yet. Oh, no? No. You can wrap up. Your Honor, the only issue, then, that I haven't touched on, and I don't think I need to spend much time on it, is Sections 1810 and 1813 of the Probate Act. It's not just a question of the fact that 1810 and 1813, or that there's sort of a hole in the Probate Act. 1810 and 1813 are separate. reflect that the legislature made a specific decision about priority among claimants and decedents of states and specifically did not do so in the case of guardianship of states, and 1815 doesn't tell us that it says the representative should pay the claims as he has funds for. It doesn't tell us that he should do that according to 1810 and 1813, which the legislature clearly decided not to apply here. And in this case, unfortunately, the representative does not have funds to pay other unsecured claimants because the secured claimants have to be paid first. Thank you. Thank you, Counselor, for your argument. Ms. Wallenfels, you may proceed with your vote. Thank you, Your Honor. I would just like to make just a few small points. The first is just that with regard to this debate about Chapter 12 versus Chapter 18, one of the things I think it's important to keep in mind in doing this is Chapter 12, when it applies, certainly exempts a category of assets from judgment and from being attached and from being garnished, things like Social Security, income, retirement, pension plan benefits, certain interest in real estate with respect to that. What the trial court's order really means and what the implications of this court's determination would be is that appropriate court could be similarly limited. I mean, the implication of that is that they would be limited in a situation where you had a guardianship estate and certainly in a disabled adult estate, an estate consisting solely of, for example, Social Security, income, retirement, pension plan benefits is not unusual. And, you know, the appropriate court does take jurisdiction and control over those types of assets. It does award those. It makes distributions from those types of assets. So it is not subject to and it's not following in its determination that limitation about exempt assets. The second point I'd like to make is just, you know, the comment Mr. Malone made about failure to disperse funds. In this case, you know, there were petitions to sell the assets of the estate. That was in part one of the principal reasons for the guardianship estate being created is because the ward was unable to handle her affairs and get things done in order. And so immediately there was a petition to sell the real estate, to list it. It was approved by the court. There were sales done. There were sales of tangible person property that occurred during the time. There was a petition to sell the tangibles, even pending at the time their judgment was given. You know, the practical reality is that when an award or disbursement is made, you know, payers want to get a check. They want to get cash. You know, the GAL, certainly, you know, our law firm, the guardians probably, the plumber, you know, the person providing the care for the dogs, they don't want a couch. You know, they don't want a one-eighth interest in a piece of real estate. They need that rendered down to cash. And for the practical reality of a disbursement being made, but the truth is that those disbursements were authorized. They were awarded. They were granted. You know, a request for fees is a petition for, you know, I am entitled to legally in the probate action and census, you know, this amount of fees for services rendered. And the court's approval of that petition is, you know, a judgment and award of that from the assets of the estate. But it's not a lien on the property unless you file it, right? It's, but a court with, in this case, a probate court with, which has really, it's given an in rem, you know, order. That's the nature of a probate court proceeding. It is a judgment as to the assets of the estate. And in my mind, that is, means that that property, but for the physical transfer belongs to that party in that interest. That going to the step of, you know, an enforcement procedure to bring, because that's the point of Chapter 12. It's an enforcement procedure to bring that property under the control and jurisdiction of a court so that it can be properly awarded an order to turn over, an order of disbursements, an order of enforcement, and approval of a sale can be done. Probate court already has that. It had that from the moment the guardianship estate was established as to those assets that were under the control of the guardianship of court. So that happened, you know, from that first day that the court established the guardianship estate. Thank you. We'd like to thank both attorneys for their arguments today. The case will be taken under advisement with a decision rendered in due course. We are in recess.